STATE OF NEBRASKA, APPELLEE, v. STANLEY KENT, APPELLANT.

116 N. W. 2d 31

Filed June 29, 1962. No. 35200.

116

Andrew J. McMullen, for appellant.

Clarence A. H. Meyer, Attorney General, Melvin K. Kammerlohr, and Dwain L. Jones, for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ., and CHADDERDON, District Judge.

BROWER, J.

Stanley Kent, the defendant in the trial court and appellant herein, was charged in the district court for Buffalo County, Nebraska, with the crime of petit larceny. The information contained two counts, the first for stealing two 15-inch automobile tires of the value of $25 each, and two 1952 model Buick automobile wheels of the value of $5 each. The second count sets out that the defendant had previously been convicted of the crime of petit larceny and the offense in the information was his second offense.

The defendant will be so designated herein and the plaintiff, State of Nebraska, as the State.

The defendant entered a plea of not guilty and a trial was had to a jury which returned a verdict of

guilty. After proof of the previous conviction, defendant was sentenced to imprisonment in the Nebraska State Reformatory for not less than 1 nor more than 2 years. His motion for a new trial having been overruled, the defendant brings the matter here on appeal.

The defendant assigns three errors which, though otherwise worded, so far as are necessary for consideration by this court, can be stated and shall be considered as follows: That the trial court erred in overruling a motion for a continuance of the time of trial because five additional names of witnesses were endorsed on the information and the charge was changed 2 days before trial; that the amendments to the information so completely changed the charge and subject matter that the 1-day's preparation allowed the defendant denied him his constitutional rights of due process of law; and that the trial court erred in not dismissing the charge because the evidence was insufficient to sustain a verdict.

The defendant pleaded not guilty and waived preliminary hearing. He was bound over by the county court of Buffalo County on May 19, 1961, upon a complaint charging him with breaking and entering a motor vehicle, and his bond was fixed at $1,000. He was admitted to bail thereafter. An information was filed against him in district court on September 20, 1961, charging him with breaking and entering a 1953 Bel Air Chevrolet automobile with intent to steal property of value therein. The defendant appeared with counsel and pleaded not guilty. On October 7, 1961, an amended information was filed charging him with like breaking and entering a 1953 Bel Air Chevrolet automobile and a 1953 Buick automobile. On October 13, 1961, the county attorney secured leave of court to amend by interlineation; the defendant's counsel made a motion for a continuance because the amendment changed the issue; and the court granted a continuance to the week of October 23, 1961. On October 23, 1961, the State requested leave to file an amended information reducing

the charge from breaking and entering a motor vehicle to the charge of second offense petit larceny, and for leave to add the names of certain witnesses to the information, which was granted. The amended information charging the crime of petit larceny of the tires and wheels was then filed and served on the defendant. Five of the 10 witnesses' names endorsed on the amended information were not on the previous one. The defendant's counsel thereupon orally moved the court for a continuance of the trial because the amended information changed his proposed defense and in order to allow defendant's counsel further time to interview witnesses, which motion was denied by the court.

The trial was had on October 25, 1961. Before trial, defendant's counsel renewed the motion because no continuance was granted at the time of the amendment and the addition of the names had been permitted. The court overruled it and in so doing stated in the record that it was a case involving petit larceny; that it was only a reduction of the charge from that previously filed; and that it involved the same transaction. The cause thereupon proceeded to trial, resulting in the verdict and sentence set out.

In Hyslop v. State, 159 Neb. 802, 68 N. W. 2d 698, this court held: "An application for postponement of time of trial of a criminal case is addressed to the sound discretion of the trial court and, in the absence of abuse of discretion disclosed by the record, a denial thereof is not error."

Later, on November 10, 1961, the date of hearing of the motion for new trial, defendant's counsel filed an affidavit elaborating the reasons why the continuance should have been granted and the manner in which the defendant was prejudiced by its not being granted. This was never made a part of the bill of exceptions and cannot be considered by this court. Again, quoting from Hyslop v. State, *supra,* we said: "Affidavits used as evidence on the hearing of an issue of fact must be

offered in evidence in the trial court and embodied in a bill of exceptions to be available to plaintiff in error in this court."

The defendant was represented by the same counsel at least from September 22, 1961, to and through the time of trial. The evidence which will be discussed hereafter makes it plainly to appear that the defendant was apprehended in May 1961, because of his previous possession of the tires taken from a 1953 Buick automobile. He knew the reason for his arrest at the time. His counsel must have known of the issues finally tried from the beginning. It would appear that the trial court's remarks that the amended information was a reduction of the charge and concerned the same transaction were correct. Under the circumstances we cannot say the court's action in overruling the motion was arbitrary or an abuse of discretion. Neither, under the circumstances, was it error to allow the five additional names to be endorsed upon the information. We have held that it is within the discretion of the trial court to allow them to be endorsed pending trial. Shaffer v. State, 123 Neb. 121, 242 N. W. 364. In this instance they were added 2 days before trial. The defendant's assignments of error concerning the endorsement of the names on the information and the refusal of the court to grant a continuance are without merit.

At the close of the State's evidence the defendant moved for a directed verdict because the State had not proved a prima facie case against the defendant. It was overruled by the trial court and the defendant then introduced his evidence. The motion was not renewed at the close of all the evidence.

"Where a motion for a directed verdict is made at the close of the evidence of the State in a criminal action, the introduction of evidence thereafter by the defendant waives any error in the ruling on the motion. The defendant, however, is not prevented from questioning the sufficiency of the evidence in the entire

record to sustain a conviction." Henggler v. State, 173 Neb. 171, 112 N. W. 2d 762.

Defendant maintains that the evidence was not sufficient to sustain the verdict. In this respect he contends there is no evidence to show the defendant's implication in the larceny, except finding the stolen tires to have been in his possession thereafter. He cites Henggler v. State, *supra,* which he concedes is a burglary case and is not authority for his contention. Further defendant calls attention to Dobson v. State, 46 Neb. 250, 64 N. W. 956; Williams v. State, 60 Neb. 526, 83 N. W. 681; and Bassinger v. State, 140 Neb. 63, 299 N. W. 293, which he contends establish the rule that proof that a petit larceny was committed with evidence that some of the stolen property was discovered to have been in the possession of defendant is not alone sufficient to make a prima facie case of larceny. These cases hold that finding the defendant in possession of property which was taken in a larceny established by the evidence does not shift the burden from the State, but that the burden of proof continues to rest on the prosecution to prove its case beyond a reasonable doubt, and that instructions to the jury which in effect shift the burden of proof to the defendant on finding the property which was stolen in his possession are erroneous. The rules concerning the consideration of such evidence are set out in Williams v. State, *supra,* as follows: "Under the doctrine announced and held in this state, no presumption of guilt arises from the mere possession of stolen property; the inference to be drawn from such fact is alone for the jury when weighed in connection with all the evidence adduced on the trial. * * *

"The force and effect to be given the fact of possession of stolen property recently after the theft, and the sufficiency or insufficiency of such evidence, are solely for the jury, and it is improper for the court to instruct the jury as to the effect to be given, or the sufficiency of, the evidence, in whole or in part."

In the case before us there appears considerable evidence which the jury might have considered as tending to show the defendant's guilt in connection with, and in addition to, the proof of finding the stolen tires to have been in the possession of the defendant.

The tires and wheels were owned by Leonard McKean, a used car dealer of Kearney, Nebraska. They were on a Buick automobile which he had recently purchased and placed on a lot used by him to store cars at 1220 Fifth Avenue in that city. McKean went to this car lot on March 22, 1961, and found the front end of the Buick on which the tires and wheels in question had been left let down on the ground and the front tires and wheels gone. The hubcaps were lying by the car with the nuts that held the wheels on therein. The tires were comparatively new Atlas tires which had been purchased on November 29, 1960, by Howard Swartz from whom McKean had purchased the car. McKean testified the tires were worth $25 each and the wheels $5 each. Swartz had the guarantee agreements on the tires issued by Gordon Baker who operates a Standard Oil station at Elm Creek, Nebraska. The tires recovered were identified as those on the car by McKean and Swartz. The latter put them on the front end of the Buick automobile before trading it to McKean. On April 22, 1961, R. T. Nelson, chief of police of the city of Kearney, stopped a car driven by Wayne Wiemers from which he took the two Atlas tires later identified as those stolen. Wiemers was taken to the police station and he there stated he had purchased them from the defendant. Wiemers testified that he had purchased the tires about 3 weeks before from the defendant for $15 and that they were taken from defendant's car and placed on that of the witness in the presence of two other witnesses who testified also. A witness testified that he had previously noticed the tires on the back wheels of the defendant's car, that they appeared too large for that car, and the back of the car appeared to be higher than the front end

when he saw them on it.  After Wiemers had related his story to the police the defendant was arrested by Lloyd L. Frank, sheriff of Buffalo County, Nebraska, on May 18, 1961, on a warrant issued April 25, 1961. Defendant was taken to Kearney by Frank.  The sheriff testified that the defendant on this trip stated he had sold tires to Wiemers.  He did not admit stealing the tires.  McKean testified that on Easter Sunday, which from the evidence was April 2, 1961, the defendant came to his home and stated he wanted McKean to make a list and figure the amount of the things taken from the lot, and that he would pay for them.  McKean had reported to the police the taking of other items also.  The defendant· did not admit he had taken anything.  When the witness asked him if he had the wheels he answered he did not have them.  When asked why he was there trying to pay for them if he didn't have them, he answered that he thought it would be cheaper.  The lot where the car from whence the tires and wheels were taken was several blocks from the home of defendant, but there was an alfalfa field between, and each of the premises could be seen from the other.  The defendant later took the stand in his own defense.  The substance of his story with respect to obtaining the tires follows. He first saw the tires in question at Foote's Filling Station in Kearney.  Defendant was then having tire trouble and his car was jacked up there in front of the garage part of the station property where his tires were being fixed.  He walked into the cafe portion of the station. There was a man standing there, they became engaged in conversation, and the man asked defendant if he wanted to buy some new tires for his "wreck."  Defendant went out and looked at them and they dickered for the price.  Defendant finally purchased the tires for $20, the man throwing in four quarts of oil also which he had.  Defendant was not sure whether the man had a car with a Nebraska or out-of-state license, but thought it was a Kansas car.  It had a white license plate and

was a 1949 to 1951 green Mercury. The man gave him a receipt which was not introduced in evidence but from which the witness testified that the man's name as given him therein was Dan Weeks. The deal was made in the latter part of March or early in April 1961. The defendant stated that one of his tires was being repaired in front of Foote's Filling Station at the time of the purchase. This was about 11:30 or 12 o'clock at night and the repair work was being done by an elderly man, a filling station attendant at Foote's station whose name was not known to him. The purchase of these tires was not corroborated. Defendant admitted that he went to McKean and asked him to find out what had been taken and the sum of it. He stated however this was about the 20th or 21st of May 1961, while he was out on bond. He did this he said because he felt it would be cheaper than to defend the lawsuit.

There was testimony by defendant's father and brother substantiating the defendant's testimony of his working on his own car at his home until late on the night when the tires were taken, and thereafter his going to bed which tended to show an alibi.

The whole matter was submitted to the jurors who were the exclusive judges of the facts. There was ample evidence which, if believed by the jury, was sufficient to warrant the verdict it returned.

"This court, in a criminal action, will not interfere with a verdict of guilty, based upon conflicting evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt." Vaca v. State, 150 Neb. 516, 34 N. W. 2d 873.

It follows that the judgment of the district court on the verdict of the jury should be affirmed.

AFFIRMED.